Birchard, J.
This proceeding is had under a private act of the general assembly, which authorizes complainant to sue for any damages sustained by reason of the non-performance of any con *432 tract entered into with him by the duly authorized agent of the state, and requires the court “to decide the controversy upon the principles of justice and good faith.”
The first difficulty which we meet in the investigation of this case, arises upon a construction of the special act conferring jurisdiction. Are we required to be governed by the known rules of law and equity as applied between man and man, or by the principles of a more enlarged rule of moral right, untrammeled by technical rules?
This is made a question. If the object was to leave us to determine the merits agreeably to the well-recognized rules of chancery and law, it maybe presumed that no specific directions would have been found in the act, or, at least, that words would have been used of a definite and certain legal import. Instead of which we are directed to observe no other guide than justice and good faith. Cases daily arise between individuals, in which strict morality imposes higher obligations upon a party than could be enforced in chancei’y. In some of them the obligation of good faith, as the words are usually understood by mankind, would require performance. As if one were to make a naked agreement to aid another, which would lead to a great expenditure of money in expectation of that aid, and after the expense incurred, the promise should be violated. This would give no right of action in any court, *yet no moralist would pretend that good faith had not been broken.
Whatever may have been the motive of the general assembly in conferring this jurisdiction upon us — whether it was done for the sole purpose of bringing into exercise the facilities provided for courts in collecting facts, or for any other purpose — it seems to us that we are made arbiters by the act, between the state and a fellow-citizen, by a jurisdiction specially conferred, to be exercised sui generis, and that it is our duty to be governed by those liberal principles which should be the guide of a committee of either house of the general assembly. Under these views of the power conferred upon us and of our duty, we feel untrammeled by the technicalities of the law and at liberty to adjust this controversy upon as liberal principles as could the general assembly, had the duty not been delegated to us. Guided by these rules, the first inquiry is, did any of the duly authorized agents of the state enter into a contract with complainant, which has not been kept and *433 performed in good faith, whereby he has sustained damage? There was a contract for the sale of two acres of land. The land was conveyed pursuant to it. The object of the complainant in vending this property was to secure the flow of the surplus water of the canal through complainant’s adjoining land; and it was understood, between him and the agent of the state, that-he should construct a tail-race at his own expense, looking to the enhanced value of the lands, to be caused by the flow of water, for his remuneration. The essence of the agreement, and the inducement held out by the state, although not embraced in the deed, was that the surplus water, to the amount of two thousand cubic feet per minute, should be turned into this channel; and, aside from technical rules, we ought to treat this engagement as a part of the contract. Seely had a right to expect the surplus-water would be turned in that direction. It was, in part, the consideration which induced him to make the sale, and the sole consideration for expending money in purchasing and dedicating the ground occupied by the basin and race, and in excavating the same.
*For three years the state was enjoined from complying with the agreement on her part, and when the injunction was dissolved, justice and good faith required that the surplus water should have received the direction originally designed. But for some probable or sufficient cause it was deemed to be for the-public interest to do otherwise. No legal contract was violated in so doing, and yet justice and good faith to Seely were disregarded, for he was left with a useless piece of canal on hand, and all hope» and means of realizing the costs and expenses of constructing it were destroyed, save that which he is now pursuing.
We believe that compensation should be made to him. That is, if we were acting as legislators we would support, by our votes, a bill passed upon these principles.
Claims have been presented to the amount of from $30,000 to-$50,000, for the losses sustained in the depreciation of real estate, purchased with a view to speculation, and now rendered of little value, owing to the diversion of the water of the canal, contrary to the understanding of the parties. These items of the master’s report must be rejected. It is possible that profits to this amount might have been realized by the complainant if the state had fulfilled the engagement of the canal commissioner. This, however,, could have only happened by sales of property at an increased *434 price beyond the purchase money, acquired by purchases made subsequently to the date of the contract entered into with the state. It would be injustice to the state to hold the complainant entitled to anticipated profits of this nature. In fact, he had no such profit, and can not, therefore, with strict propriety, be considered as. having sustained a damage in losing what he did not possess. If this is correct reasoning, the only claim which he can sustain is, for constructing the race through which the waters of the canal were to pass, between the points of leaving and being returned to the main channel, and the value of the land dedicated 1,0 the state and destroyed. All else was a matter of private speculation, with which it seems the state *had nothing to do. These are the only items- of the report which should not be wholly rejected.
The report embraces all the expenditures made by the complainant in excavating the race, grading streets, etc., prior to his insolvency. How great a proportion was for work upon the race itself, does not appear, nor does the testimony and report furnish us with the means of determining. It must be returned to the county, with directions to the master to take further testimony, and report in accordance with these principles.
It remains to dispose of an objection to complainant’s right to prosecute this petition, since his assignment to the commissioner of insolvents. In the views which we have taken of the case, the act under which we have jurisdiction in this matter confers all the right that complainant has to anything that may bo decreed in his favor. At law, or in equity, he had no interest which could pass to a commissioner of insolvents. Ho had not so performed as to acquire such legal right, even if the state could be sued as a natural person ; consequently the interest in this claim is conferred by the bill, and is a grant to him, subsequent to the assignment, based upon his moral, as contradistinguished from his legal rights.